UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARRICK LOWE,

        Plaintiff,

    v.

SAN JOAQUIN COUNTY, et al.,

        Defendants.

No.  2:25-cv-3022-TLN-CKD (PS)

ORDER AND

FINDINGS AND RECOMMENDATIONS

Plaintiff Darrick Lowe proceeds without counsel and seeks relief under 42 U.S.C. § 1983. Because plaintiff proceeds pro se, this matter is before the undersigned pursuant to Local Rule 302(c)(21). See 28 U.S.C. § 636(b)(1). In the motions presently before the court, defendants County of San Joaquin and Joseph Garcia[1] move to dismiss plaintiff's first amended complaint ("FAC") under Rule 12(b)(6) of the Federal Rules of Civil Procedure and plaintiff seeks leave to file a further amended complaint. (ECF Nos. 13, 23.) The court finds both motions suitable for decision without oral argument under Local Rule 230(g). Accordingly, the hearing set for February 25, 2026, is vacated. For the reasons set forth below, the undersigned recommends the motion to dismiss be denied and the motion for leave to amend be granted.

---

[1] Two other defendants, Jayson Burk and Orlando Ontiveros-Chi, have not appeared.

1

## I.    Background

Plaintiff filed this action on October 20. 2025, and filed the operative FAC on December 12, 2025. (ECF Nos. 1, 8.) Under the allegations in the FAC, plaintiff is an active-duty member of the United States armed forces and father of a minor son. (ECF No. 8, ¶ 7.) At all relevant times, defendant Jayson Burk was a supervising sergeant with the San Joaquin County Sheriff's Office and defendants Garcia and Orlando Ontiveros-Chi were deputies so employed. (Id., ¶¶ 8-10.)

In late 2021 and early 2022, plaintiff's 10-year-old son began exhibiting emotional distress at elementary school. (ECF No. 8, ¶ 13.) An evaluation by a pediatrician documented that plaintiff's son was suffering from stress caused by classmates, which "placed school staff—and through them—the County—on notice that the child's difficulties were rooted in mental-health instability rather than parental misconduct." (Id., ¶ 13.)

On February 2, 2022, Deputy Garcia, serving as the school resource officer, responded to the school after plaintiff's son repeatedly hit his head on a wall and fence. (ECF No. 8, ¶ 14.) Deputy Garcia concluded no further action was warranted, and made notes indicating he was aware the child had a history of making false statements. (Id., ¶ 14.) On February 15, 2022, school officials again contacted the Sheriff's Office after the child wrapped a shoelace around his neck, struck his head against a pole, and expressed suicidal intent. (Id., ¶ 16.)

On February 16, 2022, Deputy Garcia initiated a crisis referral to the County's Behavioral Health Services ("BHS"). (Id., ¶ 17.) BHS clinicians documented no signs of physical abuse, found plaintiff and the child's mother cooperative, and identified the child's conduct as the result of severe emotional and behavioral dysregulation requiring mental-health intervention. (Id., ¶ 18.) Deputy Garcia and the Sheriff's Department had actual knowledge through these events that the child was in an ongoing mental health crisis and an "unreliable historian" whose statements required scrutiny and corroboration. (Id., ¶ 19.)

On the morning of March 1, 2022, Deputy Garcia met with Plaintiff's son at his school and, according to school records, questioned him about alleged discipline he was receiving at home. (ECF No. 8, ¶ 22.) Deputy Garcia did not involve a mental-health professional in evaluating the credibility of the child's statements or seek corroboration from the child's mother

2

before acting on the child's statements. (Id., ¶ 23.)

On the afternoon of March 1, 2022, the defendants arrived at plaintiff's home and summoned him to the front door during what began as a purported "knock and talk." (ECF No. 8, ¶¶ 24, 27B.) Plaintiff declined to discuss parenting or stale allegations of "spanking weeks ago" and Garcia stated that because plaintiff did not want to talk, he would be arrested. (Id., ¶ 26.) Defendants arrested plaintiff without a warrant or exigent circumstances on his porch, handcuffed him, and escorted him to a patrol vehicle. (Id., ¶ 24.) "By exploiting Plaintiff's response to their knock to seize him at the threshold, Defendants violated clearly established Fourth Amendment principles prohibiting warrantless in-home arrests absent exigency." (Id., ¶ 27B.)

Deputies had obtained an Emergency Protective Order by telephone from a judicial officer but had not sought or obtained an arrest warrant. (ECF No. 8, ¶ 25.) Defendant Garcia "misrepresent[ed] authority" by implying he possessed a warrant. (Id., ¶ 27A.)

Plaintiff alleges the County maintained policies, customs, or practices that substituted uncorroborated child statements for evidence, disregarded mental-health indicators when assessing credibility, and permitted warrantless residential arrests absent exigency despite readily available judicial review. (ECF No. 8, ¶ 79.) The defendants failed to conduct a minimally reasonable investigation before arresting him. (Id., ¶ 27C.)

Plaintiff was in custody for 32 hours and suffered injuries from being handcuffed. (ECF No. 8, ¶¶ 24, 28, 29.) He was issued a Detention Certificate pursuant to California Penal Code § 849(b), certifying the incident was deemed a "detention only, not an arrest" under state law. (Id., ¶ 29.) The District Attorney declined to file charges. (Id., ¶ 29.) CPS opened a referral and determined allegations against plaintiff were unfounded. (Id., ¶ 31.)

Defendants failed to update plaintiff's criminal history record and left a "violent felony arrest" on his record, leading to the denial of a concealed-carry permit through the State of Alaska licensing authority and other harm. (ECF No. 8, ¶¶ 29A, 47-48, 51.) The events triggered a 30-month misconduct investigation by the military during which plaintiff was placed under a promotion hold and subjected to elevated command review procedures. (Id., ¶ 50.) The presence of a false and uncorrected arrest record impairs his career prospects and caused him to be

subjected to a subsequent disciplinary inquiry. (Id., ¶ 53A.) Plaintiff's child suffered mental-health deterioration after the events. (Id., ¶ 34.)

On April 7, 2022, and on May 16, 2024, plaintiff filed internal affairs complaints. (ECF No. 8, ¶ 38). An internal affairs detective informed plaintiff probable cause existed to arrest him because a seven-year-old sibling corroborated the ten-year-old child's statements. (Id., ¶ 39.) Plaintiff alleges the detective's response evidences a "County-wide failure to train and supervise deputies on differentiating mental-health crises from criminal child abuse investigations." (Id., ¶ 40.)

The FAC brings four claims under 42 U.S.C. § 1983 as follows: (1) unlawful seizure (4th Amendment); (2) retaliation (1st and 5th Amendments); (3) entity liability under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 689 (1978); and (4) due process violation (14th Amendment). Plaintiff seeks damages and declaratory and injunctive relief.

Defendants County of San Joaquin and Garcia filed their motion to dismiss on December 24, 2025. (ECF No. 13.) These defendants move to dismiss on grounds that (1) plaintiff's claims are time-barred and (2) the FAC fails to state a Monell claim in the third cause of action. The motion is fully briefed with plaintiff's opposition and defendants' reply. (ECF Nos. 17, 19.) Plaintiff also filed a motion for leave to file a proposed second amended complaint, which is likewise fully briefed. (ECF Nos. 23, 26, 27.)

**II.    Legal Standards for Dismissal Under Rule 12(b)(6)**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure may be warranted for "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In evaluating whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1989). Particularly because plaintiff proceeds pro se, the court liberally construes the pleadings and affords plaintiff the benefit of any doubt. Bretz v. Kelman, 773 F.2d 1026, 1027 (9th Cir. 1985). Nevertheless, the court does not accept as true allegations that are

4

merely conclusory, unwarranted deductions of fact, or unreasonable inferences. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

### III.    Motion to Dismiss

#### A.  Timeliness

The moving defendants argue plaintiff's claims under 42 U.S.C. § 1983 are time-barred. A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations when the running of the statute is apparent on the face of the complaint. Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 969 (9th Cir. 2010). "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." Id. (quoting Supermail Cargo, Inc. v. U.S., 68 F.3d 1204, 1206 (9th Cir. 1995)).

State law governs the statute of limitations period for suits under 42 U.S.C. § 1983. Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009). The applicable statute of limitations for plaintiff's claims is two years. See The Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 701 (9th Cir. 2009) ("Claims under § 1983 are subject to the state statute of limitations for personal injury claims. In California, that state rule is two years[.]").

Federal law determines when a civil rights claim accrues. Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004). "Under federal law, a claim accrues when the plaintiff knows or should know of the injury that is the basis of the cause of action." Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009).

Plaintiff alleges he was wrongfully arrested on March 1, 2022. Defendants argue his claims accrued on that date and thus that the statute of limitations expired two years later, on March 1, 2024. (ECF No. 13 at 7.) Defendants note plaintiff did not file the instant action until October 20, 2025, more than eighteen months after expiration of the two-year limitations period.

Plaintiff responds in relevant part that the Servicemembers Civil Relief Act, 50 U.S.C. § 3936 ("SCRA") applies to toll his claims.[2] (ECF No. 17 at 3-6.) Under the SCRA, "[t]he period

---

[2] Plaintiff also argues he is entitled to equitable tolling because a military investigation presented a "legal impediment" to timely filing, because there were later-accruing and ongoing

of a servicemember's military service may not be included in computing any period limited by law… for the bringing of any action or proceeding in a court… by or against the servicemember[.]" 50 U.S.C. § 3936(a).

Defendants argue plaintiff's Exhibit 16 (see ECF No. 8 at 39) establishes he is a reserve officer. (ECF No. 19 at 3.) Defendants assert "SCRA tolling does not apply to reserve officers." (Id.) For that proposition, defendants cite the following statutory definitions and urge the court to conclude as follows:

> The Act defines "military service" for a member of the Coast Guard as "(i) active duty, as defined in section 101(d)(1) of title 10." 50 U.S.C. § 3911(2)(A)(i). "Active duty" means "full-time duty in the active military service of the United States." 10 U.S.C. § 101(d)(1). Section 101 provides separate definitions of "active-duty" and "reserve." 10 U.S.C. § 101(c). It defines "reserve" as a "reserve component," which is defined as someone in the "Coast Guard Reserve." 38 U.S.C. § 101(27). Thus, as someone in the Coast Guard Reserve, Plaintiff does not qualify for tolling under the SCRA.

(ECF No. 19 at 3.)

However, plaintiff's first amended complaint alleges "Plaintiff… is… an active-duty member of the United States armed forces" (ECF No. 9, ¶ 7), which would appear to qualify as "military service" within the meaning of 50 U.S.C. § 3936(a). In opposition to the motion to dismiss, plaintiff argues he was engaged in qualifying military service for a substantial period and that the FAC alleges "a government-ordered PCS to Alaska in mid-2022, followed by sustained operational duties, deployments, disaster-response command responsibilities, and mandatory resident training extending through late 2023." (ECF No. 17 at 5.)

Even if this court were to accept defendants' argument that exhibit 16 establishes plaintiff is a reserve officer, defendants have not shown plaintiff could prove no set of facts in support of SCRA tolling to establish the timeliness of his claims. Defendants' position that SCRA tolling categorically cannot apply to plaintiff because of an exhibit stating he is a reserve officer is not well supported by the statutory definitions cited. It is also contrary to the holdings of other courts.

---

constitutional injuries, and because the FAC alleges "a course of post-incident obstruction and misrepresentation that deprived Plaintiff of foundational facts uniquely within Defendants' control." (ECF No. 17 at 8-10.)

See DeTemple v. Leica Geosystems, Inc., 576 F. App'x 889, 892 (11th Cir. 2014) ("For a [Coast Guard] reservist like DeTemple, the SCRA's protection begins 'on the date of the member's receipt of the order' to report for military service."); Giel v. Winter, 503 F. Supp. 2d 208, 211 (D.D.C. 2007) (applying SCRA tolling to a reserve officer for a period of active duty). Untimeliness of plaintiff's claims is not apparent from the face of the pleading. Accordingly, the motion to dismiss should be denied on this point.

### B. Monell Claim against County of San Joaquin

To establish liability for governmental entities under Monell, 436 U.S. at 689-90, a plaintiff must prove (1) deprivation of a constitutional right; (2) the municipality had a policy; (3) this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) the policy is the moving force behind the constitutional violation. Dougherty v. City of Covina, 654 F.3d 892, 900 (9th Cir. 2011); see also Gant v. Cnty. of Los Angeles, 772 F.3d 608, 617 (9th Cir. 2014).

Plaintiff alleges his arrest "reflected established and widespread practices within the Sheriff's Office that substituted uncorroborated child statements for evidence, disregarded mental-health indicators when assessing credibility, and permitted warrantless residential arrests absent exigency." (ECF No. 8, ¶ 78.) And further, the County maintained a longstanding custom of treating unverified allegations made by young children as inherently reliable and sufficient to justify felony child-abuse arrests, even when deputies possessed information undermining the credibility of those allegations." (Id., ¶ 79.) The County's failure to correct or update plaintiff's criminal history record following issuance of the § 849(b) Detention Certificate and the District Attorney's declination of charges demonstrates a County policy, custom, or practice of maintaining inaccurate and stigmatizing arrest information. (Id., ¶ 77A.) Plaintiff alleges the incorrect arrest record "continues to appear as an unresolved violent-offense matter because defendants failed to correct, update, or withdraw the record. (Id., ¶ 89.)

Defendants argue the FAC fails to state a Monell claim because plaintiff does not allege facts showing the following: (1) that any particular action or inaction by the County caused him any damage; (2) a longstanding policy/custom/practice; (3) how a failure to train harmed him; (4)

that a final policy maker ratified the conduct. (ECF No. 13 at 11-14.) They argue his allegations are too conclusory to state a claim.

Liberally construing the complaint, however, plaintiff has pleaded a sufficient Monell claim against the County of San Joaquin based on an alleged custom, policy, or practice. The FAC's allegations about specific alleged policies that caused the Fourth Amendment violation are more detailed than those in cases defendants cite to argue the claim is too conclusory as pleaded. For example, in Bagley v. City of Sunnyvale, the court found the plaintiff's Monell allegations were insufficient because they simply took the specific violation at issue and, without supporting factual contentions, alleged the city defendant had a policy of engaging in those illegal activities. No. 16-CV-02250-LHK, 2017 WL 344998, at *16 (N.D. Cal. Jan. 24, 2017). Defendants also cite Dougherty v. City of Covina, 654 F.3d 892, 900-01 (9th Cir. 2011), as a "similar circumstances" where the Ninth Circuit affirmed dismissal of a Monell claim because the plaintiff merely recited the mantra that the entity's policies and/or customs were the moving force and/or affirmative link in violating his constitutional rights. (ECF No. 13 at 11-12.)

Plaintiff here does more than merely allege in boilerplate fashion that the County's policies caused the alleged violations. He identifies specific policies, customs, or practices allegedly at issue including the substitution of uncorroborated child statements for evidence, "treating unverified allegations made by young children as inherently reliable and sufficient to justify felony child-abuse arrests, even when deputies possessed information undermining the credibility of those allegations[,]" disregarding mental-health indicators when assessing credibility, and failing to correct, update, or withdraw false arrest records. (See ECF No. 8, ¶ 79.) Plaintiff's policy allegations meet the standard for pleading a Monell claim because they contain sufficient underlying facts to give fair notice and, taken as true, plausibly suggest an entitlement to relief. See AE ex rel. Hernandez v. Cnty. of Tulare, 666 F.3d 631, 637 (9th Cir. 2012); Bagley, 2017 WL 344998, at *15 ("multiple district courts have held that a Monell claim has been sufficiently pled where, in addition to pleading causation of an individual officer's unconstitutional actions, the complaint alleges sufficient detail about the municipal policy at issue"). Liberally construing the complaint, plaintiff has adequately alleged Monell liability.

**IV.    Motion for Leave to Amend**

Plaintiff seeks leave to amend to plead enhanced factual detail regarding communications with San Joaquin County officials, particularly concerning California Public Records Act requests and responses." (ECF No. 23 at 1-2.) Plaintiff states the proposed amended complaint provides additional facts but does not alter legal theories, add new parties, or change the fundamental nature of the allegations. (Id. at 2.) Plaintiff attached a copy of the proposed amended complaint. (ECF No. 23-1.)

When a party may not amend as a matter of course, that party "may amend ... only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts in the Ninth Circuit consider the following factors: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended its complaint." Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) (citation omitted); see also Foman v. Davis, 371 U.S. 178, 182 (1962). Absent prejudice or a strong showing of another factor, there exists a presumption in favor of granting leave to amend. See Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

Defendants Garcia and County of San Joaquin oppose granting plaintiff leave to amend, arguing the motion was improperly filed while their motion to dismiss is pending. (ECF No. 26 at 3-4.) However, defendants fail to show they are prejudiced by plaintiff seeking leave to amend while their motion to dismiss is pending where the court fully considers their motion to dismiss.

Defendants also argue the proposed amended complaint does not cure the deficiencies in the claims. (ECF No. 26 at 4-8.) Because the undersigned finds the motion to dismiss should be denied, this argument also fails.

Defendants do not show prejudice or a strong showing of another reason to deny leave to amend. Thus, plaintiff should be granted leave to file the second amended complaint.

**V.    Order and Recommendation**

In accordance with the above, IT IS ORDERED that the hearing set for February 25, 2026, is VACATED.

////

9

In addition, IT IS RECOMMENDED as follows:

1. Defendants' motion to dismiss (ECF No. 13) be DENIED.

2. Plaintiff's motion for leave to amend (ECF No. 23) be GRANTED and plaintiff be granted 14 days to file the second amended complaint.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within seven (7) days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  February 20, 2026

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8, lowe25cv3022.mtd

10